COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Kelsey, Beales and Senior Judge Clements


DANA O. ORUM, A/K/A
 DANA PILLOIS

                                                              MEMORANDUM OPINION[*]
v.        Record No. 2350-12-2                                     PER CURIAM
                                                                 JUNE 4, 2013

BUCKINGHAM COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
                                  Kimberley S. White, Judge

                (Yvonne Z. Schewel, on brief), for appellant.

                (E. M. Wright, Jr.; Roger S. Stough, Guardian *ad litem* for the
                minor children, on brief), for appellee.


        On November 29, 2012, the trial court entered orders terminating the residual parental

rights of Dana O. Orum (appellant) to her children, H.P., T.P., and S.P., pursuant to Code

§ 16.1-283(B), 16.1-283(C)(1), and 16.1-283(C)(2).  On appeal, appellant argues the trial court

erred in refusing to grant motions to continue the termination hearing and, subsequent to the

termination hearing, to reopen the evidence and consider her testimony.  Appellant also

challenges the sufficiency of the evidence to support the terminations.  Upon reviewing the

record and briefs of the parties, we conclude this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                              Facts

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Appellant is the mother of H.P., born on December 13, 2001, S.P., born on November 11, 2003; and T.P., born on May 8, 2007. The residual parental rights of H.P.'s father, Michael Houchens, and S.P. and T.P.'s father, Anthony Pillois, have been terminated voluntarily.

Beginning in 2010, appellant and her husband, Pillois, were involved in a contentious custody dispute following their separation.[1] As a result of the situation in the home, Buckingham County Department of Social Services (DSS) opened a foster care prevention case for the family, upon court order. Both appellant and Pillois were told to participate in psychological evaluations and to cooperate with ongoing DSS services, such as monthly home visits. As a result of appellant's psychological evaluation, completed in May 2011, the service plan was modified to include ongoing counseling for appellant and the children. In addition, appellant was to take steps to avoid the children being exposed to conflict with Pillois.

_____

[1] Appellant and Pillois divorced during the course of the proceedings that resulted in the termination of appellant's parental rights.

At about 6:00 a.m. on June 7, 2011, four-year-old T.P. was found naked and alone on a public road about a mile from his home. When police officers went to the home, they found it empty. Appellant returned a few hours later. She claimed she had gone to the store and had arranged for a neighbor to look after T.P. That same day, DSS removed all three children from appellant's custody and they were placed together in foster care.

On August 4, 2011, appellant was involved in an incident resulting in a charge of possessing narcotics. She was arrested in November 2011 for possessing methadone.

Appellant was inconsistent in cooperating and participating in the services required by the foster service plan. Her visitation with the children was revoked in August 2011 because she exhibited erratic behavior at a court hearing. For her visitation to be reinstated, appellant was required to participate in random drug screenings and complete a psychiatric evaluation. Due to missed and rescheduled appointments, as well as her relocation to different residences, appellant did not complete the psychiatric evaluation until March 2012. At some point, appellant transferred her Buckingham County home and property to her boyfriend as a gift.

During her interactions with DSS social workers, appellant exhibited a wide range of moods and behaviors, sometimes lashing out at social workers during meetings. Appellant failed to appear consistently at appointments for her to receive drug screenings. Nonetheless, based upon results from drug screenings that were completed, DSS social workers became concerned that appellant was abusing medications for which she had no prescription. After completion of her psychiatric evaluation in March 2012, appellant did not consistently attend counseling sessions, as required by the foster care service plan. Nor did appellant complete parenting classes, as the service plan required.

On October 10, 2012, appellant received a twenty-four-month deferral pursuant to Code § 18.2-251 upon the charge of possessing a controlled substance.

At the time of the November 26, 2012 termination hearing, appellant had not seen the children in fifteen months. H.P., S.P., and T.P. were thriving in the foster home they shared. All three were happy and well-adjusted, and were performing well in school. When H.P. first was placed in foster care she appeared mature beyond her age and believed taking care of her younger siblings was her responsibility. Since that time, H.P. had become more relaxed and willing to let the foster mother and father parent the children. S.P. was an outgoing child who enjoyed numerous extracurricular activities. T.P., who initially was fearful of being left alone or being apart from the foster mother, had become more confident. The foster parents desired to adopt all three children.

Appellant was not present in court when the termination hearing began as scheduled on November 26, 2012. Her attorney stated that, at another court appearance, she advised appellant of the date and time of the termination hearing. There had been no further contact between appellant and the attorney. The attorney asked for a continuance of the termination proceedings. DSS's attorney, who had subpoenaed several witnesses for the hearing and was prepared to go forward that day, objected to a continuance. Finding that appellant had been made aware of the date and time of the termination hearing, the trial court denied the motion for a continuance. The termination hearing proceeded in appellant's absence.

Several days after the trial court rendered its termination decision, appellant filed a motion for reconsideration and to allow additional testimony. Appellant stated that in September or October her attorney had notified her verbally of the date of the termination hearing. Appellant said that thereafter she lost contact with her attorney because appellant had entered the attorney's contact information incorrectly in her newly obtained cellular telephone. Appellant asked that she be permitted to present her testimony to the trial court.

At a hearing upon appellant's motion, appellant said she knew the termination hearing was scheduled for November, but she did not know the precise date. She had sent a text message to and tried to call her attorney, but she used an incorrect telephone number. Appellant's thirteen-year-old daughter, M.M., who lived with her paternal grandmother, then testified. M.M. stated that on the Saturday before the scheduled termination hearing on Monday, November 26, 2012, appellant sent M.M. a text message stating that she had court on Monday. The trial court credited M.M.'s testimony regarding appellant's knowledge of the date of the termination hearing, and denied appellant's motion to reopen the evidence.

## Denial of a Continuance

"Whether to grant or deny a continuance . . . is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong." Cardwell v. Commonwealth, 248 Va. 501, 508, 450 S.E.2d 146, 151 (1994). "'Abuse of discretion and prejudice to the complaining party are essential to reversal [on appeal from a denial of a continuance].'" Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990) (quoting Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)).

At the time the trial court ruled upon the motion for a continuance, it was not disputed that appellant's attorney had made her aware of the date and time of the termination hearing. No explanation was offered for her absence at the hearing. DSS was prepared to proceed with the hearing and had witnesses present to testify. Considering these facts and circumstances, the trial court did not abuse its discretion in refusing to grant a continuance of the termination hearing.

## Refusal to Reopen Evidence

"Whether to reopen a case lies within the sound discretion of the trial judge." Minor v. Commonwealth, 16 Va. App. 803, 805, 433 S.E.2d 39, 40 (1993).

> "When all the testimony in the trial of a case has been concluded
> and the witnesses for the respective parties have been excused

from their attendance upon court, whether the court will allow the
introduction of other testimony is a question addressed to the
sound discretion of the trial judge, '. . . and unless it affirmatively
appears that this discretion has been abused this court will not
disturb the trial court's ruling thereon.'"

Id. (quoting Mundy v. Commonwealth, 161 Va. 1049, 1064, 171 S.E. 691, 696 (1933)).

Although appellant testified at the hearing on her motion that she did not know the date and time of the termination hearing, she acknowledged that she knew the hearing was in November. The termination hearing occurred within the final days of the month. It was incumbent upon appellant, who previously was advised by her attorney of the date and time of the hearing, to contact her attorney or the trial court if she was uncertain of when the hearing was to occur. Moreover, the trial court credited M.M.'s testimony, which tended to prove that appellant knew of the scheduled hearing on November 26, 2012. For whatever reason, appellant simply elected not to appear. In light of these facts and circumstances, we cannot say the trial court abused its discretion in refusing to reopen the evidence and allow appellant to present her testimony.

Sufficiency of the Evidence

A termination of parental rights under Code § 16.1-283(C)(2) requires clear and convincing evidence that termination is in the best interests of the child and that

> the parent . . . without good cause, ha[s] been unwilling or unable
> within a reasonable period of time not to exceed twelve months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

In addition,

> Proof that the parent . . . , without good cause, ha[s] failed or been
> unable to make substantial progress towards elimination of the
> conditions which led to or required continuation of the child's
> foster care placement in accordance with their obligations under

> and within the time limits or goals set forth in a foster care plan . . . shall constitute prima facie evidence of this condition.

Id.

The three children were removed after the youngest was found naked and alone wandering on a public road in the early morning. Appellant was not at home at the time. At the time of the termination hearing, appellant's three children had been in foster care for more than seventeen months, and she had been denied visitation with them since August 2011. Visitation would have resumed if appellant had consistently complied with drug screening, but she did not do so. In fact, there were indications that appellant was abusing drugs for which she had no prescription. While the children were in foster care appellant was charged with a drug offense. Since the removal of the children, appellant had not completed the parenting training required of her, nor had she consistently participated in counseling. She had given away the family home.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The evidence proved that the three children, who lived together in a foster home, were thriving since removal from appellant's custody. In addition, the foster parents desired to adopt them. Clear and convincing proof thus demonstrated the conditions required for termination under Code § 16.1-283(C)(2) and that termination of appellant's parental rights was in the best interests of the children.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). In this regard, appellant's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

In light of our conclusion that the terminations under Code § 16.1-283(C)(2) should not be disturbed on appeal, we need not consider appellant's alternative arguments that the evidence was insufficient to support terminations under Code § 16.1-283(B) or 16.1-283(C)(1). See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

We summarily affirm the decision of the trial court.

Affirmed.